214 N.J. Super. 338 (1986)
519 A.2d 874
DENNIS MCDONOUGH, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
RAYMOND JORDA, DEFENDANT-THIRD PARTY PLAINTIFF-APPELLANT. and MIKE KNIGHT, DEFENDANT-THIRD PARTY PLAINTIFF,
v.
ZANE GREY, NEW BRUNSWICK POLICE DEPARTMENT, CITY OF NEW BRUNSWICK AND RONALD GATYAS AND ROHOGA, INC. T/A ALE-N-WICH, THIRD PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1986.
Decided October 28, 1986.
*341 Before Judges KING, DEIGHAN and MUIR, Jr.
Jane B. Cantor argued the cause on behalf of appellant Jorda (Garruto, Galex & Cantor, attorneys; Bryan D. Garruto, of counsel; Jane B. Cantor and Carol Gerity on the brief; Jane B. Cantor on the reply brief).
John F. Lisowski argued the cause on behalf of cross-appellant McDonough (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; John F. Lisowski, of counsel; Robert A. Assuncao on the brief).
Robert J. Reilly, III, argued the cause on behalf of respondent Ale-N-Wich (Haggerty & Donohue, attorneys; Robert J. Reilly on the brief).
Linda K. Anderson argued the cause on behalf of respondents City of New Brunswick and New Brunswick Police Department (James M. Cahill, City Attorney, attorney; Linda K. Anderson, of counsel and on the brief).
John Brady argued the cause on behalf of respondents New Brunswick Police Department and City of New Brunswick (Richard A. Amdur, attorney).
No appearance for or brief filed on behalf of respondent Grey.
The opinion of the court was delivered by MUIR, Jr., J.A.D.
After a jury verdict and the trial judge's rulings on motions for new trials on liability and damages, we granted leave to *342 appeal on the correctness of three rulings by the trial judge: (1) the denial of a motion for a new trial on liability; (2) the granting of a motion for a new trial on damages, and (3) the granting of a directed verdict in favor of the City of New Brunswick.
The action had its genesis in a brawl outside a New Brunswick tavern on the night of July 10, 1981. Plaintiff, a New Brunswick police officer, alleging injuries sustained in the brawl, sought compensatory damages from defendants Raymond Jorda and Mike Knight. Jorda, in several amended pleadings, filed counterclaims and third-party complaints. In those pleadings, he sought compensatory and punitive damages from plaintiff and from third-party defendant Zane Grey, and other individuals not directly involved in this appeal. Jorda asserted claims of negligence and intentional malicious conduct on the part of plaintiff and Grey. He also alleged violation of his civil rights under state and federal law. The third-party complaint named the City of New Brunswick as a defendant. That pleading made no specific allegations of liability against the city. During discovery, trial and this appeal, the theory of city accountability resolved into a claim of negligence in the policies and customs of city officials which placed plaintiff and Grey in a position to conduct their aggressive, wrongful behavior.
Plaintiff and Jorda also asserted claims against the tavern and its bartender for negligent serving of alcoholic beverages. See Rappaport v. Nichols, 31 N.J. 188 (1959); Anslinger v. Martinsville Inn, Inc., 121 N.J. Super. 525 (App.Div. 1972). The jury found no cause for action on those claims. There is no appeal from those verdicts. The tavern and bartender have a tangential involvement in this appeal, however, as to the review of the denial of a new trial on liability.
After a five day trial, the trial judge granted a directed verdict in favor of the city, finding no viable claim under either the New Jersey Tort Claims Act or under the Civil Rights Act, *343 42 U.S.C.A. § 1983 (West 1981). The jury returned a verdict in favor of Jorda against plaintiff and Grey. It found that plaintiff had committed an assault and battery on Jorda and had violated his civil rights. It awarded Jorda $90,000 in compensatory damages, $150,000 in punitive damages and $25,000 in damages for the civil rights violation. It found similar liability against Grey and awarded Jorda $100,000 in compensatory damages, $175,000 in punitive damages and $25,000 in damages for the civil rights violation.
The trial judge concluded the evidence did not support the total $565,000 award and set it aside. He based his determination as to the compensatory damages awarded on the absence of any permanent injury to Jorda. He found the failure of Jorda to prove the wealth of the wrongdoers as an element of his claim fatal to the punitive damage award. (Neither the court nor trial counsel raised this issue prior to or after the jury instructions.) Coterminus with the vacation of all damage verdicts, the trial judge denied a motion for new trial on liability.
The evening of the brawl, plaintiff and several friends came to the tavern after a softball game. Plaintiff wore a softball uniform. He also carried his service revolver pursuant to City Police Department policy. Jorda, Knight and some other college students met at the tavern for a social evening. None of the participants in the brawl showed any reasonably visible signs of intoxication. Only Jorda testified to an effect from his drinking and that related to his coordination in trying to flee the scene of the brawl.
When Jorda and Knight left the tavern, Jorda took a mug of beer. The bartender followed to retrieve the mug. Plaintiff, with some of his friends, followed, ostensibly to assist the bartender. What transpired thereafter is the subject of significant variation.
Jorda and Knight testified that plaintiff and his friends precipitated the brawl. Their version essentially indicated *344 plaintiff went after Jorda, so Knight, a football linebacker, acting to defend Jorda, punched plaintiff and two of his friends, knocking them to the ground. Plaintiff then pulled out his service revolver and badge. He identified himself as a police officer and fired at least one shot into the ground. Jorda's friends fled when the plaintiff fired his revolver. Jorda tried to flee, but plaintiff hit him and Jorda fell to the ground. While he was on the ground, several persons whom Jorda could not identify, kicked him.
Plaintiff's version of the incident identified Jorda and Knight as the aggressors. He claimed Jorda became aggressive when asked to return the beer mug and that Knight initiated the fight. He testified that upon being knocked down by Knight's punch, he stood up, identified himself as a police officer and fired a shot to "get control of the situation." He denied any knowledge of a police regulation prohibiting the firing of warning shots.
Other police officers, including Grey, came to the scene. They handcuffed Jorda and put him in the back seat of a patrol car. Jorda testified they then drove him around while Grey systematically beat him with a nightstick. Photographs were offered into evidence to show Jorda's physical condition after the brawl. Grey denied having the nightstick and denied hitting Jorda.
The emergency room report on Jorda's admission indicated he had two lacerations on the back of his head, which required stitches, and contusions of the nose and lower lip. Jorda testified that he also sustained a lump on his head the size of a grapefruit and soreness all over his body, and that he went to the doctor eight to ten times for a knotted muscle. No medical expert testified on the extent of Jorda's injuries.
The judge, in his charge to the jury, stated the jury could award Jorda damages for pain and suffering but not for any permanent injury. That charge drew no objection from Jorda's counsel.

*345 I.
Plaintiff contends the trial judge erred in denying his motion for a new trial on liability. He argues the exorbitant amount of the damage award is evidence that the verdict was the product of passion and prejudice of the jury which also tainted the liability verdict. He further contends that inconsistencies in the testimony of Jorda's witnesses mandate the need for a new trial.
A trial court's ruling on a motion to set aside a jury verdict as against the weight of the evidence will not be reversed on appeal unless it clearly appears that there was a miscarriage of justice. R. 2:10-1. In making our assessment, we apply the same standard and must defer to the trial judge's evaluation of witness credibility and demeanor and his or her "feel of the case." Dolson v. Anastasia, 55 N.J. 2, 6 (1969).
The trial judge, while shocked at the magnitude of the damage award, found no basis for granting a new trial on liability. Relying on the recited criteria, we agree. However, we vacate the verdict on civil rights liability against plaintiff due to the insufficiency of the trial court's instructions to the jury.
We find no miscarriage of justice in the verdict finding plaintiff liable for assault and battery. That verdict rested essentially on the credibility of the witnesses. The witnesses gave disparate versions of what transpired. The trial judge's sense for the credibility and demeanor of the witnesses, which the jury evaluated, justified denying an application to vacate the liability determination. We conclude there is nothing in the record to warrant changing that determination.
As to the verdict on civil rights liability, we conclude the insufficiency of the trial judge's charge constituted plain error requiring a new trial on liability for plaintiff.
*346 The entire § 1983 jury instruction, both substantive and damage aspects, came during the trial judge's explanation on the law of damages. His charge provided:
Now, in addition to the punitive damages, there is another element of damage which Mr. Jorda claims and that is damages for violation of his civil rights. This is under our Federal statute, 42 Section 1983 and I'll just read it to you in its pertinent part. `Each person who under color of any statute, ordinance, regulation, custom, or usage of any state or territory of or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action of lawsuit and equity or other proper proceedings for redress.'
It is the contention of Mr. Jorda that by the commission of this assault and battery by both Officers McDonough and Grey, who were then exercising their duties as police officers, that they violated his Constitutional right of life, liberty, or property without due process of law under the 14th Amendment of the Constitution.
Now, as to punitive damages and to violation of damages for alleged violation of civil rights, again you must exercise your good, sound judgment as to what is just and fair in that regard to accomplish the purposes of those elements of damage.
Jury instructions must correctly state the applicable law in understandable language and plainly spell out how the jury should apply the facts as it may find them. Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966). Whether counsel avail themselves of the opportunity to request instructions under R. 1:8-7, the trial judge must prepare a full, complete charge on all facets of the applicable law.
The applicable law in this instance required an instruction regarding the essential elements of a § 1983 cause of action, with careful explanation of the scope of those elements as well as related legal concepts, including any possible defenses. While the judge did provide general instructions on the applicable law, he did not do so in a manner and scope sufficient to guide the jury in its responsibility to reach its ultimate conclusions.
The judge should have instructed that Jorda had the burden of proving, by a preponderance of the evidence: (1) that *347 the conduct complained of was committed by a person acting under color of State law, and (2) that the conduct deprived the claimant of rights, privileges and immunities secured by the Constitution of the United States, identifying the applicable rights.[1]See Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981).
The trial court's charge described Jorda's contention. However, the charge did not define the nature of an action under color of state law or the nature of the deprived right. Further, it did not delineate how the jurors should apply that law to the facts as they found them.
Additionally, by locating all the elements of the § 1983 liability and damage claim in the damage portion of the entire jury charge, the jury may have been misled to believe that it had to decide only the issue of damages. The verdict interrogatories compounded that possibility by omitting any provision for liability under § 1983.
Finally, the absence of any reference to Jorda's burden of proof exacerbated the possible misleading of the jury. Collectively, these inadequacies mandate a reversal and new trial on all § 1983 issues.
We do not suggest by the foregoing to outline the entire charge. We commend the trial court's attention to model charges on § 1983.[2]

II.
Jorda contends the trial judge erred in ordering a new trial on damages. We disagree.
*348 We have previously set forth the standard for reviewing a motion for a new trial by the trial and appellate courts. When that standard is considered in relation to a motion for a new trial on damages, our Supreme Court has directed that:
A trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injuries and resulting disabilities shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust. In making its overview, a court must accept the medical evidence in the most favorable light to the plaintiffs; it must accept the conclusion that the jury believed the plaintiffs' injury claims and the testimony of their supporting witnesses, and if, tested on such bases, the verdict (even if generous) has reasonable support in the record, the jury's evaluation should be regarded as final. [Taweel v. Starn's Shoprite Market, 58 N.J. 227, 236 (1971)].
The only feature distinguishing appellate review from that of the trial court is that we must give deference to the trial judge's "feel of the case." Baxter v. Fairmont Food Co., 74 N.J. 588, 600 (1977). Further, there is little or no difference in our role whether the damages being reviewed are compensatory or punitive. See Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 456-457 (1977).
The jury awarded Jorda a total of $565,000 against both plaintiff and Grey. This shocked the conscience of the trial judge. For the $190,000 compensatory damage award, Jorda proved no permanent injuries. Nor did he provide medical testimony on the scope and nature of his injuries. He sustained two cuts to the back of the head requiring stitches. He further sustained a contusion to the nose and lower lip, a lump on his head and a knotted muscle. He also stated he now had an emotional fear of police officers.
We conclude the compensatory award was so disproportionate to the extent of the injuries sustained as to constitute a manifest injustice. The evidence does not support an award of that magnitude, even giving due regard to a concept of generousness.
The $225,000 punitive damage award must be set aside for failure of proof on the issue of the wealth of plaintiff *349 and Grey. In assessing exemplary damages, a jury must take into consideration the wealth of the defendants. Leimgruber v. Claridge Associates, 73 N.J. at 456. This is so because the theory behind punitive damages is to punish for the past event and to prevent future offenses, and the degree of punishment resulting from a judgment must be, to some extent, in proportion to the means of the guilty person. Restatement (Second) of Torts § 908 comment d (1977).
Jorda offered no evidence on the ability of the wrongdoers to pay any award. That lack of evidence, an essential of Jorda's burden of proof, precluded the jury from having a proper foundation to assess damages. Moreover, in the absence of a ruling or instruction by the court, the jury had no idea of the appropriate law.
Finally, as to the damages for the purported civil rights violations committed by plaintiff and Grey, while set aside with the liability verdict on that issue, we note the jury interrogatories made no provision for compensatory and punitive damages. On retrial, with both types of damages charged as before, the interrogatories should be appropriately corrected.

III.
Jorda avers the trial judge erred in directing a verdict in favor of the City. (For the purposes of our decision, the Police Department and City of New Brunswick are synonymous.)
Jorda's theory of liability rested on a claim of negligence existing through policies and customs established or permitted to exist in the police department. He asserted that negligence was reflected by (1) lack of training of the subject officers, since plaintiff testified he did not know of the police department regulations against firing warning shots; (2) requiring police officers to carry weapons 24 hours a day, even in bars, and (3) failure of the department to keep proper records on police misconduct, thus allowing police officers the latitude which led to the tortious conduct by plaintiff and Grey. He proffered *350 liability for such negligence existed under the New Jersey Tort Claims Act, specifically N.J.S.A. 59:2-2, and under § 1983.
We conclude there is no municipal liability for the alleged negligent conduct under either the New Jersey Tort Claims Act or § 1983.
N.J.S.A. 59:2-10 provides:
A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice or willful misconduct. [Emphasis supplied].
This language is clear and unambiguous. As such, the language is not open to construction or interpretation and to do so in a case where not required, is to do violence to the doctrine of the separation of powers. Watt v. Mayor and Council of Borough of Franklin, 21 N.J. 274, 277 (1956). That municipal immunity existed here is open to no cavil when one reads N.J.S.A. 59:2-1 and the comment which follows it from the Report of the Attorney General's Task Force on Sovereign Immunity (1972).
N.J.S.A. 59:2-1 provides, in the part pertinent here:
b. Any liability of a public entity established by this act is subject to any immunity of the public entity.... [Emphasis supplied].
The comment to this section, after noting the economic enigmas created for municipalities by costly litigation, possible judgments and insurance costs, stated:
... the analytical approach [of] the courts ... should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities. [Emphasis in original].

Subsection (b) is intended to insure that any immunity provisions provided in the act ... will prevail over liability provisions. [Emphasis supplied].
The language of the statute is clear. When the municipal employees committed the intentional torts, respondeat superior did not apply. The City was not vicariously liable in such circumstances. We cannot, by judicial prestidigitation, create municipal liability where municipal immunity is legislatively prescribed.
*351 Jorda's § 1983 liability claims rested on the alleged negligent policies and customs of city officials previously noted.
Since Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 695, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611, 638 (1978), a municipality may be liable under § 1983 for injury inflicted by its employees when the injury occurs in the course of the execution of a municipality's policy or custom. With that development, described as producing a somewhat sketchy state by Justice, now Chief Justice, Rehnquist in Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791, 802 (1985), refinement of the scope of municipal liability has followed. See id.; Pembaur v. City of Cincinnati, 475 U.S. ___, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).
However, a pivotal element of any such liability remains the deprivation of a protected right. The apparent protected rights argued here are a liberty interest in personal security and freedom from excessive force in an arrest. The argument promulgated suggests a denial of Fourth (as implemented against the States through the Fourteenth) and Fourteenth amendment rights. But direct culpability of state officials under § 1983 cannot be established under the substantive or procedural aspects of the Fourteenth's Due Process Clause when the triggering act is simple negligence or lack of due care. Daniels v. Williams, 474 U.S. ___, ___, 106 S.Ct. 662, 663, 88 L.Ed.2d 662, 666 (1986); Davidson v. Cannon, 474 U.S. ___, ___, 106 S.Ct. 668, 670, 88 L.Ed.2d 677, 683 (1986). In both of these decisions, the negligence of state officials was the underlying premise for claims of § 1983 liability. In Daniels, the Supreme Court held that where a government official is merely negligent in causing the injury, "no procedure for compensation is constitutionally required." Daniels, 474 U.S. at ___, 106 S.Ct. at 666, 88 L.Ed.2d at 669. In Davidson, the Court held that lack of due care on the part of a public official which led to the serious injury simply "[did] not approach the sort of abusive government conduct that the Due Process *352 Clause was designed to prevent." Davidson, 474 U.S. at ___, 106 S.Ct. at 671, 88 L.Ed.2d at 682. Cf. Anastasio v. Planning Bd. of Tp. of West Orange, 209 N.J. Super. 499 (App.Div. 1986).
Consequently, we conclude, an assertion of negligence existing through policies and customs on the part of municipal officials which may have led to an injury being inflicted by a municipal employee, even though inflicted intentionally by that employee, does not establish a cognizable cause of action against the municipality under § 1983.
Based on our ruling, we need not deal with Jorda's contentions of judicial error in precluding discovery on the customs of the police department and precluding trial admissibility of police department regulations for substantive purposes.

IV.
In conclusion, we affirm the directed verdict in favor of the City of New Brunswick. We further affirm the order for a new trial on damages. Finally, we affirm the denial of a new trial on liability except as to the § 1983 liability verdicts which we reverse and remand for trial.
NOTES
[1] Although not raised in issue here, proximate cause of the injuries and consequent damages allegedly sustained may also have to be charged. See Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).
[2] While we make no judicial evaluation of the correctness of model charges on § 1983 claims, we suggest as an aid to preparation of a charge that the trial judge review 4 Modern Federal Jury Instructions (Matthew Bender) Ch. 87 (1985).