[No. S003530. Aug. 15, 1991.]

MYRETTA ADAMS, as Conservator, etc., Plaintiff and Respondent, v. CLIFFORD MURAKAMI, Defendant and Appellant.

108

## COUNSEL

Kirtland & Packard, Horvitz, Levy & Amerian, Horvitz & Levy, Barry R. Levy, Ellis J. Horvitz, S. Thomas Todd, Loren Homer Kraus, Greines, Martin, Stein & Richland, Irving H. Greines, Alan G. Martin, J. Richard Jennings, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Patricia H. Wirth and Steven J. Bernheim for Defendant and Appellant.

Fred J. Hiestand, Haight, Brown & Bonesteel and Roy G. Weatherup as Amici Curiae on behalf of Defendant and Appellant.

Kaufler & Scott, Kaufler, Bailey & Scott, Philip Kaufler, Lawrence W. Scott and Gary H. Amsterdam for Plaintiff and Respondent.

Ian Herzog, Douglas Devries, Leonard Sachs, Bruce Broillet, David Harney, Laurence Drivon, Robert Steinberg, Roland Wrinkle, Harvey R. Levine, Leonard Esquina and Evan D. Marshall as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—The question in this personal injury action is twofold: (1) Is evidence of a defendant's financial condition a prerequisite to an award of punitive damages? (2) If so, is the burden on the plaintiff rather than on the

defendant to introduce evidence of the defendant's financial condition? We answer both questions in the affirmative. Our prior decisions, constitutional considerations, and the importance of appellate review indicate that an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition. The absence of this evidence thwarts effective appellate review of a claim that punitive damages are excessive. As to the second question, we conclude that Evidence Code section 500, the traditional allocation of burden of proof, and fundamental fairness require the plaintiff rather than the defendant to introduce this evidence.

## FACTS

A 39-year-old female (hereafter patient), a diagnosed chronic schizophrenic of low intelligence, was a resident of View Heights Convalescent Hospital. Clifford Murakami, M.D., was her attending physician. Through her conservator, patient brought this action against the hospital and Dr. Murakami for medical malpractice, battery, and intentional infliction of emotional distress. Patient alleged that, as a result of wrongful acts and omissions of the hospital and Dr. Murakami, she became pregnant by another patient while she was hospitalized and gave birth to a son who was diagnosed as mentally retarded and autistic. Patient's claims against the hospital were settled.

Patient's claims against Dr. Murakami proceeded to a jury trial. Neither patient nor Dr. Murakami introduced at trial any evidence of Dr. Murakami's financial condition. The jury returned a verdict for patient on her causes of action for medical malpractice and intentional infliction of emotional distress. After adjustments by the trial court, she was awarded a total of $1,024,266, including $750,000 in punitive damages.

Dr. Murakami appealed, contending in part that the punitive damages award was improper because patient had not introduced evidence of Dr. Murakami's financial condition. The Court of Appeal rejected the argument without discussion and affirmed the judgment.

## DISCUSSION

### I. Necessity of evidence of defendant's finances

#### A. Prior California decisions

When faced with a challenge to the amount of a punitive damages award, our traditional function has been to determine whether the award is excessive as a matter of law or raises a presumption that it is the product of

passion or prejudice. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980] (*Neal*).) We set forth three criteria in *Neal* for making that determination, "all of which are grounded in the purpose and function of punitive damages." (*Id.*, at p. 928.) That purpose is a purely *public* one. The public's goal is to punish wrongdoing and thereby to protect itself from future misconduct, either by the same defendant or other potential wrongdoers. (*Id.*, at p. 928, fn. 13.)[1] The essential question therefore in every case must be whether the amount of damages awarded substantially serves the societal interest. In answering that question in *Neal*, we first explained the importance of the nature of the defendant's wrongdoing and the amount of compensatory damages. We then observed, "Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence (see fn. 13, *ante*), will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. . . . By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." (21 Cal.3d at p. 928.) This was a reiteration of our prior observation that, "It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

Because the quintessence of punitive damages is to deter future misconduct by the defendant, the key question before the reviewing court is whether the amount of damages "exceeds the level necessary to properly punish and deter." (*Neal, supra,* 21 Cal.3d at p. 928; *Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) The question cannot be answered in the abstract. The reviewing court must consider the amount of the award *in light of* the relevant facts. The nature of the inquiry is a comparative one. Deciding in the abstract whether an award is "excessive" is like deciding whether it is "bigger," without asking "Bigger than what?"

A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition. Since *Neal, supra,* 21 Cal.3d 910, we have repeatedly examined punitive damage awards in light of the defendant's financial condition. (*Wyatt* v. *Union Mortgage Co.* (1979) 24

---

[1] By acknowledging the commonly accepted purpose of punitive damages, we express no view as to the efficacy of punitive damages in deterring misconduct. To our knowledge, no empirical data exists on that question. (1 Ghiardi, Punitive Damages Law & Practice (1985) § 2.06, p. 14.) There is, however, a continuing debate on the issue. (*Id.*, §§ 2.07-2.13, at pp. 15-29.)

Cal.3d 773, 790-791 [157 Cal.Rptr. 392, 598 P.2d 45]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 823-824 [169 Cal.Rptr. 691, 620 P.2d 141].) This simple principle is well understood by the bench. The standard jury instruction on punitive damages given in this case expressly directed the jury to consider the "defendant's financial condition." (BAJI No. 14.71 (7th ed. 1986 bound vol.) p. 205.) The Use Note to this instruction explained that consideration of this factor was necessary under *Neal, supra*, 21 Cal.3d 910. (BAJI No. 14.71, *supra*, at p. 207.) The principle is also axiomatic to the bar. For example, a recent practice guide for attorneys lists "The Ten Essential Steps To A Proper Punitive Damage Award." (Riley, Proving Punitive Damages: The Complete Handbook (1981) p. 6.) The guide states, "*RULE 9: Show the defendant's wealth.*" (*Id.*, at p. 7, emphasis in original.)

 Plaintiff would dispense with the need for evidence of a defendant's financial condition because such evidence was only one of the three factors set forth in *Neal, supra*, 21 Cal.3d 910, 928. Apparently, plaintiff contends that, because the *Neal* court listed three criteria, less than three are sufficient. We find no logical premise for this conclusion. The effect of such approach would be to eliminate a three-pronged analysis in favor of a two-pronged analysis. The *Neal* court set forth *three* factors, explaining the importance of each. Nothing in *Neal* suggests that any of the three is dispensable.[2]

 To the contrary, the most important question is whether the amount of the punitive damages award will have deterrent effect—without being excessive. Even if an award is entirely reasonable in light of the other two factors in *Neal, supra*, 21 Cal.3d 910 (nature of the misconduct and amount of compensatory damages), the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone.* For example, in *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991 [193 Cal.Rptr. 206, 49 A.L.R.4th 1125], the court reiterated the *Neal* factors (*supra*, 21 Cal.3d 910) and concluded that, although the defendant's misconduct was "reprehensible," the punitive damages award had to be reduced solely because it constituted too great a portion of the defendant's net worth and income. (*Burnett* v. *National Enquirer, Inc., supra*, 144 Cal.App.3d at p. 1012.) The court explained that it could "find acceptable

---

[2]The selective approach to the factors in *Neal, supra*, 21 Cal.3d 910, is troublesome in general. If the defendant's financial condition were dispensable, so would be the other two factors stated in *Neal*. Under the selective approach, a reviewing court could refuse to consider whether a punitive damages award has any rational relationship to either the nature of the defendant's misconduct or the amount of compensatory damages. Even if the misconduct were relatively minor (in light of the types of misconduct that will support punitive damages) and the compensatory damages were nominal, the reviewing court could uphold a multimillion dollar award solely because the defendant had enough resources to pay the award. Such result would stand *Neal* on its head.

only that balance between the gravity of a defendant's illegal act and a penalty necessary to properly punish and deter . . . ." (*Ibid.*) This balance cannot be made absent evidence of the defendant's financial condition. Similarly, in *Zhadan v. Downtown L. A. Motors* (1976) 66 Cal.App.3d 481 [136 Cal.Rptr. 132], the court concluded that substantial punitive damages were warranted in light of the defendant's serious misconduct (*id.*, at p. 497) and that the ratio between compensatory and punitive damages was not objectionable (*id.*, at p. 499), but nevertheless reversed the judgment because the punitive damages were excessive in light of the defendant's financial condition. (*Id.*, at p. 500 [award exceeded one-third of the defendant's net worth].)

The determination of whether an award is excessive is admittedly more art than science. "The channeling of just the correct quantum of bile to reach the correct level of punitive damages is, to put it mildly, an unscientific process complicated by personality differences." (*Devlin v. Kearney Mesa AMC/Jeep/ Renault, Inc.* (1984) 155 Cal.App.3d 381, 388 [202 Cal.Rptr. 204].) ■ However, when provided with evidence of a defendant's financial condition, the reviewing court can at least reach a reasonably informed decision. Without such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive. Plaintiff offers no justification for imposing such a burden on reviewing courts or for encouraging ill-informed decisions. Sound judicial policy weighs in favor of fully informed decisions, especially when a public interest is at stake. One state's high court explained, "Indeed the public policy nature of the award places in question the jurisdiction of the district court to award relief in the form of punitive damages in the absence of proof of the wealth or financial condition of the defendant." (*Adel v. Parkhurst* (Wyo. 1984) 681 P. 2d 886, 892.)

An example demonstrates the wisdom of *Neal, supra,* 21 Cal.3d 910. Assume that no evidence of a defendant's financial condition is introduced. A jury renders an award of $2 million. The defendant's financial condition, however, is limited so as to preclude payment of punitive damages in excess of $10,000. *Neal* recognized that the purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not to destroy. Under plaintiff's approach, however, the reviewing court will be rendered unable to consider the effect of the award because the record will contain no evidence of the defendant's financial condition. Such result is contrary to the well-established rule that a punitive damages award is excessive if it is disproportionate to the defendant's ability to pay. (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 824 [punitive damages award reversed because it exceeded more than two and one-half months of defendant's annual net income]; *Merlo v. Standard Life & Acc. Ins. Co.,*

*supra,* 59 Cal.App.3d 5, 18 [award of punitive damages excessive because it was more than 30 percent of defendant's net worth]; *Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 469-470 [136 Cal.Rptr. 653] [award greater than 15 percent of net worth reversed]; *Zhadan* v. *Downtown L. A. Motors, supra,* 66 Cal.App.3d 481, 500 [award excessive because it was one-third of the net worth].)[3]

The principle that a punitive award must be considered in light of the defendant's financial condition is ancient. After the Norman conquest in 1066, there arose in English law a system of civil sanctions known as "amercements." (*Browning-Ferris Industries* v. *Kelco Disposal* (1989) 492 U.S. 257, 287-289 [106 L.Ed.2d 219, 246-247, 109 S.Ct. 2909, 2927] [conc. and dis. opn. of O'Connor, J.].) Because of the sometimes abusive nature of amercements, the Magna Carta prohibited those that were disproportionate to the offense or that would deprive the wrongdoer of his means of livelihood: "A freeman shall only be amerced for a small offence according to the measure of that offence. And for a great offence he shall be amerced according to the magnitude of the offence, *saving his contenement*; and a merchant, in the same way, *saving his merchandize.* And a villein, in the same way, if he fall under our mercy, shall be amerced *saving his wainnage.*" (Magna Carta (1215) ch. 20, italics added.)[4] Absent evidence of a defendant's financial condition, a punitive damages award can financially annihilate the defendant. We see no reason why a modern-day civil defendant should be entitled to less consideration than one was given 800 years ago.

 Plaintiff attempts to justify discarding the defendant's financial condition from the analysis under *Neal, supra,* 21 Cal.3d 910, by claiming that a reviewing court will be able to consider the other two *Neal* factors—the nature of the misconduct and the amount of compensatory damages.

---

[3]The absence of financial evidence would lead to an even more egregious result in the common situation in which a punitive damages claim is asserted against multiple defendants. Assume a simple case in which two defendants are found jointly and severally liable for beating a plaintiff. As to each of them, the reprehensibility of the misconduct and the amount of the plaintiff's compensatory damages will be the same or similar. Under plaintiff's view, the jury could properly impose equal punitive damages awards against each defendant, even if they had widely differing abilities to pay, i.e., one could pay the award with little discomfort, but the other would be destroyed. A reviewing court, however, would be unable to differentiate between them. Such a result would have little rationality or fairness. Nor would it further the public interest in punitive damages awards that are sufficient to deter misconduct without being excessive.

[4]"Contenement" referred to a freehold or, in a broader sense, property of any kind necessary for a freeman to maintain his position. (3 Oxford English Dict. (2d ed. 1989) p. 815, col. 2.) A "villein" was a peasant occupier of land who was subject to a lord. (19 Oxford English Dict., *supra,* at p. 637, col. 2; see also 1 Pollock & Maitland, History of English Law (2d ed. 1909) ch. 1, § 12, pp. 356-383.) The villein's "wainnage," also referred to as "gainage," signified his necessary implements of cultivation and husbandry. (6 Oxford English Dict., *supra,* at p. 314, col. 1.)

Those two factors standing alone, however, will not enable a reviewing court to make an informed determination of whether an award is excessive. As explained above (maj. opn., *ante,* pp. 111-112), an award might seem to be warranted under those factors, but nevertheless be excessive in light of the defendant's financial condition.

The better reasoned line of Court of Appeal decisions requires evidence of the defendant's financial condition. In *Forte v. Nolfi* (1972) 25 Cal.App.3d 656 [102 Cal.Rptr. 455], the court reversed a punitive damages award, primarily because the trial court entered judgment "without taking any evidence of the resources of the alleged wrongdoers which it sought to punish." (*Id.,* at p. 689.) More recently, in *Dumas v. Stocker* (1989) 213 Cal.App.3d 1262 [262 Cal.Rptr. 311] (*Dumas*), the court fully considered our decision in *Neal, supra,* 21 Cal.3d 910, and explained that the absence of evidence as to financial condition "frustrates meaningful appellate review of punitive damage awards (i.e., of whether the award was 'grossly disproportionate'), since the absence of evidence of net worth precludes an appellate court from deciding whether an award might, for example, bankrupt the defendant." (*Dumas, supra,* 213 Cal.App.3d at p. 1269.)

The *Dumas* court, *supra,* 213 Cal.App.3d 1262, also correctly observed that, absent financial evidence, a jury will be encouraged (indeed, required) to speculate as to a defendant's net worth in seeking to return a verdict that will appropriately punish the defendant. The present case bears out that concern. At *plaintiff's* request, the jury was given BAJI No. 14.71 (7th ed. 1986 bound vol.), which stated, "In arriving at any award of punitive damages, *you are to consider* the following: . . . [¶] The amount of punitive damages which will have a deterrent effect on the defendant *in the light of defendant's financial condition* . . . ." (Italics added.) Plaintiff's present argument that financial evidence is not necessary rings hollow in light of her own decision to request that the jury be instructed to base its punitive damages award on defendant's financial condition. More important, the jury was told to base its award on a factor as to which there was no evidence. Faced with such a dilemma, the jury was forced to speculate as to defendant's financial condition. Sound public policy should preclude awards based on mere speculation. ■ The traditional rule is that compensatory damages must not be based on speculation. (*Dumas, supra,* 213 Cal.App.3d at p. 1269.) There is no reason for a different standard for punitive damages. *Dumas* states the correct rule. (See also *Storage Services v. Oosterbaan* (1989) 214 Cal.App.3d 498, 516 [262 Cal.Rptr. 689] [expressly following *Dumas* rule].)

■ The decision most commonly cited for the contrary view is *Vossler v. Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952 [192 Cal.Rptr.

219] (*Vossler*). As the court explained, however, in *Dumas, supra,* 213 Cal.App.3d 1262, all of the decisions relied on by the *Vossler* court, *supra,* 143 Cal.App.3d 952, were themselves based on a single decision—*Hanley* v. *Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733] (*Hanley*). *Hanley* is unpersuasive in several respects. First, the court's consideration of the issue was minimal, two short paragraphs. The court noted only that the defendant had cited no authority directly in support of his position. (*Id.,* at p. 645.) The court, however, cited no contrary authority. Without any support one way or the other and without any meaningful discussion of the issue, *Hanley* provides slender support for the subsequent cases that have relied on it.

Second, as a later court put it, *Hanley, supra,* 218 Cal.App.2d 633, "reached its conclusion on a unique rationale." (*Dumas, supra,* 213 Cal.App.3d at p. 1268.) The defendant in *Hanley, supra,* 218 Cal.App.2d 633, "did not contend, either in the trial court or here [on appeal], that in fact the award made was excessive in the light of his financial status." (*Id.,* at p. 646.) As the *Dumas* court, *supra,* 213 Cal.App.3d 1262, explained, "In effect, *Hanley* held that under the circumstances of that case, and in light of the failure to raise the issue of excessiveness, the parties inferentially stipulated away the issue of [the defendant's] net worth, rendering evidence by the plaintiff unnecessary." (*Id.,* at p. 1268.) Petitioner in this case, however, has contended that the punitive damages are excessive.[5]

Third and most important, *Hanley, supra,* 218 Cal.App.2d 633, was decided long before our decision in *Neal, supra,* 21 Cal.3d 910, in which we emphasized the importance of considering a defendant's financial condition in order to determine whether an award of punitive damages is excessive.

A Court of Appeal recently faced with the conflict on this issue concluded: "We have reviewed *Dumas* [*supra,* 213 Cal.App.3d 1262,] and *Vossler* [*supra,* 143 Cal.App.3d 952, 961-965,] and the California cases upon which they rely, and we are persuaded that *Dumas* states the better rule. There is no basis for meaningful appellate review of a punitive damage award without evidence of the defendant's financial condition." (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d 498, 516.) We agree. We affirm the rule

---

[5]Plaintiff disputes whether defendant properly preserved his argument on this point. We have, as a practical matter, decided this question in defendant's favor by granting review solely on this issue. Moreover, a reviewing court has discretion to decide such an issue if it presents a pure question of law arising on undisputed facts, particularly when the issue is a matter of important public policy. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].) Most important, as we have explained above, the primary interest that must be protected is the public interest in punitive damage awards in appropriate amounts. We cannot allow the *public* interest to be thwarted by a defendant's oversight or trial tactics.

stated in *Dumas, supra,* 213 Cal.App.3d 1262, and disapprove of *Hanley, supra,* 218 Cal.App.2d 633, and its progeny. (See, e.g., *Fenlon* v. *Block* (1989) 216 Cal.App.3d 1174, 1178-1183 [265 Cal.Rptr. 324]; *Pat Rose Associates* v. *Coombe* (1990) 225 Cal.App.3d 9, 23 [275 Cal.Rptr. 1]; *Liberty Transport, Inc.* v. *Harry W. Gorst Co.* (1991) 229 Cal.App.3d 417, 438 [280 Cal.Rptr. 159].)[6]

Our decision in *Neal, supra,* 21 Cal.3d 910, reflected sound considerations of fairness and a concern for rationality in the awarding of punitive damages. We decline to eviscerate that decision by eliminating the need for evidence of the defendant's financial condition. Without such evidence, reviewing courts will be unduly restricted in their attempts to assess whether awards of punitive damages are excessive.[7]

### B. *Constitutional considerations*

The question before us is one of state law, but it has recently acquired a federal constitutional dimension, which although not dispositive, weighs strongly in favor of requiring evidence of a defendant's financial condition. In *Pacific Mut. Life Ins. Co.* v. *Haslip* (1991) 499 U.S. __ [113 L.Ed.2d 1, 111 S.Ct. 1032] (*Haslip*), the high court rejected a due process challenge to a punitive damages award under Alabama law, holding that the long-entrenched common law method for assessing punitive damages is not *"per se* unconstitutional." (*Id.,* at p. __ [113 L.Ed.2d at p. 19, 111 S.Ct. at p. 1043], italics in original.) More important for the issue before us, however, the court also made clear that, "It would be just as inappropriate to say that, because punitive damages have been recognized for so long, their imposition is never unconstitutional. . . . We note once again our concern about punitive damages that 'run wild.' . . . [¶] One must concede that unlimited jury discretion—or unlimited judicial discretion for that matter—in the fixing of

---

[6]This result seems to have been implicitly approved by the drafters of the current California Jury Instructions, Civil. The Comment to the punitive damages instruction notes the two conflicting lines of Court of Appeal decisions. (BAJI No. 14.72.2 (1989 re-rev.) (7th ed. 1991 pocket pt.) com., p. 67.) The instruction itself, however, continues to state that the jury *must* consider evidence of the defendant's financial condition. (BAJI No. 14.72.2, *supra,* at p. 66.)

[7]Various measures of a defendant's ability to pay a punitive damages award have been suggested. Defendant in this case contends the best measure of his ability to pay is his net worth. The Association for California Tort Reform, appearing as amicus curiae on behalf of defendant, advocates the profitability of the defendant's misconduct as the proper measure. We decline at present, however, to prescribe any rigid standard for measuring a defendant's ability to pay. No financial evidence of any kind was introduced, and the issue has not been fully developed by the parties. We cannot conclude on the record before us that any particular measure of ability to pay is superior to all others or that a single standard is appropriate in all cases.

punitive damages may invite extreme results that jar one's constitutional sensibilities." (499 U.S. at p. __ [113 L.Ed.2d at p. 20, 111 S.Ct. at p. 1043].)

To determine if the constitutional line had been crossed in that case, the court carefully examined the Alabama law governing punitive damages. In upholding the award, the court noted the state's "post-trial procedures for scrutinizing punitive awards." (*Haslip, supra*, 499 U.S. at p. __ [113 L.Ed.2d at p. 21, 111 S.Ct. at p. 1044].) The trial court was required " 'to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages.' " (*Ibid.* [113 L.Ed.2d at p.21, 111 S.Ct. at p. 1044], quoting *Hammond* v. *City of Gadsden* (Ala. 1986) 493 So.2d 1374, 1379.) The factors deemed appropriate for the trial court to consider included " 'the impact upon the parties.' " (*Haslip, supra*, 499 U.S. at p. __ [113 L.Ed.2d at p. 21, 111 S.Ct. at p. 1044].) Obviously, this factor would encompass consideration of the defendant's financial condition. Otherwise, effect on the defendant could not be considered.

Most important, the high court emphasized the "detailed substantive standards" the Alabama Supreme Court uses in evaluating punitive awards on appeal. (*Haslip, supra*, 499 U.S. at p. __ [113 L.Ed.2d at p. 22, 111 S.Ct. at p. 1045].) The Alabama court had made clear that the defendant's financial condition is "a consideration *essential* to a post-judgment critique of a punitive damages award." (*Green Oil Co.* v. *Hornsby* (Ala. 1989) 539 So.2d 218, 222, italics added.) The high court explained, that "The [Alabama] standards provide for a rational relationship in determining whether a particular award is greater than reasonably necessary to punish and deter." (*Haslip, supra*, 499 U.S. at p. __ [113 L.Ed.2d at p. 23, 111 S.Ct. at pp. 1045-1046].) Absent a consideration of a defendant's financial condition, a court (whether at the trial or appellate level) simply cannot make an informed decision whether, as the high court put it, "a particular award is greater than reasonably necessary." (*Ibid.* [113 L.Ed.2d at p. 23, 111 S.Ct. at p. 1046]) Or, as the Alabama high court phrased it, "What (i.e., how much) will it take to punish *this* Defendant? . . . [¶] The gravity of the wrong may be the same, whether the defendant is a salaried employee or a multimillion dollar corporation, but, in the case of the former, the $220,000 verdict would be far out of proportion to its intended purpose. What it takes to punish the one bears no relationship to what it takes to punish the other." (*Green Oil Co.* v. *Hornsby, supra*, 539 So.2d 218, 223, italics in opinion, quoting *Ridout's-Brown Service, Inc.* v. *Holloway* (Ala. 1981) 397 So.2d 125, 127-128 (conc. opn. of Jones, J.).)[8]

---

[8]Alabama's punitive damages law differs from California's in a procedural respect. An Alabama jury is not allowed to consider the financial position of the defendant. (*Green Oil*

We need not decide, and do not decide, whether evidence of a defendant's financial condition is a *constitutional* prerequisite under *Haslip, supra*, 499 U.S. ___, to an award of punitive damages. ■ At a minimum, however, the high court has made clear a constitutional mandate for meaningful judicial scrutiny of punitive damages awards. This requirement weighs heavily in favor of evidence of a defendant's financial condition. Absent such evidence, a reviewing court cannot make an informed decision whether the amount of punitive damages is excessive as a matter of law. That commonsense concern is itself sufficient to require such evidence as a matter of state law. Moreover, in light of *Haslip*, the absence of such evidence raises doubt as to the constitutionality of a punitive damages award.[9]

Co. v. *Hornsby, supra*, 539 So.2d 218, 222.) This difference does not support the view that evidence of a defendant's financial condition is unnecessary. Although the evidence is withheld from an Alabama jury, it is deemed "essential to a post-judgment critique" by the trial and appellate courts. (*Ibid.*) Shortly after the high court decided *Haslip, supra*, 499 U.S. ___, the Alabama Supreme court reiterated that, "A trial judge, in reviewing a punitive damages award by a jury, *must likewise consider the effect of the verdict on the defendant's financial condition . . . .*" (*Fuller v. Preferred Risk Life Ins. Co.* (Ala. 1991) 577 So.2d 878, 884, italics added.) Alabama law is therefore consistent with our decision that evidence of a defendant's financial condition is essential.

Other states also require evidence of a defendant's financial condition to sustain a punitive damages award. (*Adel v. Parkhurst, supra*, 681 P.2d 886, 892; *Nelson v. Jacobsen* (Utah 1983) 669 P.2d 1207, 1219; *McDonough v. Jorda* (1986) 214 N.J. Super. 338 [519 A.2d 874, 879]; see also *Bankers Life & Casualty Company v. Kirtley* (8th Cir. 1962) 307 F.2d 418, 425 [applying Iowa law and reversing award because there was "no reliable information" as to the defendant's finances].)

Some states have adopted plaintiff's view. (See, e.g., *Folks v. Kansas Power and Light Co.* (1988) 243 Kan. 57 [755 P. 2d 1319, 1334]; *Anderson v. Latham Trucking Co.* (Tenn. 1987) 728 S.W.2d 752, 754.) We are not persuaded. Those decisions show nothing more than the same split of authority among states that has arisen in our Courts of Appeal. Moreover, some of those decisions shed little light on the issue because their discussion was either dictum (*Anderson v. Latham Trucking Co., supra*, 728 S.W.2d 752, 754), or minimal with no consideration of public policy or fairness. (*Ibid.*; *Rinaldi v. Aaron* (Fla. 1975) 314 So.2d 762, 763; *Asphalt Engineers, Inc. v. Galusha* (1989) 160 Ariz. 134 [770 P. 2d 1180, 1184] [one-sentence discussion of the issue].) Most important, none of those cases were decided in light of the clear requirement for meaningful review set forth in *Haslip, supra*, 499 U.S. ___.

[9]Although the high court upheld Alabama's punitive damages system in *Haslip, supra*, 499 U.S. ___, the court expressed concern with less detailed state standards. Referring to the Alabama standards, the court stated, "This, we feel, distinguishes Alabama's system from the Vermont and Mississippi schemes about which Justices expressed concern in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), and in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). In those respective schemes, an amount awarded would be set aside or modified only if it was 'manifestly and grossly excessive,' [citation] or would be considered excessive when 'it evinces *passion, bias, and prejudice* on the part of the jury so as to shock the conscience.'" (*Haslip, supra*, 499 U.S. at p. ___, fn. 10 [113 L.Ed.2d at p. 22, 111 S.Ct. at p. 1045], italics added.) The California standard of review appears to be similar to those as to which the high court noted its concern. We have stated that a punitive damages award will be set aside only when it "is so grossly disproportionate as to raise a presumption

## II. *Allocation of the burden of proof*

 If evidence of the defendant's financial condition is a prerequisite to a punitive damages award, the next question is which party bears the burden of introducing the evidence at trial. Plaintiff contends that, because such evidence is unnecessary, neither party bears the burden of producing it. This reasoning is tenable only if one accepts plaintiff's argument that the evidence is unnecessary, period. The correct rule is that the evidence *is* required. (Maj. opn., *ante*, pp. 109-118.) Thus, one side or the other must bear the burden of producing it. As we shall explain, the burden is properly placed on the plaintiff.

Evidence Code section 500 states, "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential *to the claim for relief* or defense that he is asserting." (Italics added.) As the California Law Revision Commission explained, "The facts that must be shown to establish a cause of action or a defense are determined by the substantive law, not the law of evidence." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 500, at p. 431 [Deering's Ann. Evid. Code (1986 ed.) § 500, p. 215].) In light of our holding that evidence of a defendant's financial condition is essential to support an award of punitive damages, Evidence Code section 500 mandates that the plaintiff bear the burden of proof on the issue. A plaintiff seeking punitive damages is not seeking a mere declaration by the jury that the plaintiff is entitled to punitive damages in the abstract. The plaintiff is seeking an award of real money in a specific amount to be set by the jury. Because the award, whatever its amount, cannot be sustained absent evidence of the defendant's financial condition, such evidence is "essential to the claim for relief." (Evid. Code, § 500.)

Fundamental fairness must be the lodestar for our analysis. The California Law Revision Commission comment to Evidence Code section 500 states,

---

that it is the result of passion or prejudice." (*Neal, supra,* 21 Cal.3d at p. 928.) The high court recently remanded to the California Courts of Appeal several cases for reconsideration in light of *Haslip, supra,* 499 U.S. __, apparently to determine whether the California "passion and prejudice" standard of review is constitutionally sufficient. (See, e.g., *Transamerica Occidental Life Ins. Co.* v. *Koire* (1991) __ U.S. __ [114 L.Ed.2d 706, 111 S.Ct. 2253]; *AMCA International Finance Co.* v. *Hilgedick* (1991) __ U.S. __ [113 L.Ed.2d 713, 111 S.Ct. 1614]; *Church of Scientology of California* v. *Wollersheim* (1991) __ U.S. __ [113 L.Ed.2d 234, 111 S.Ct. 1298]; *International Society for Krishna Consciousness of California* v. *George* (1991) __ U.S. __ [113 L.Ed.2d 234, 111 S.Ct. 1299]; *Pacific Lighting Corporation* v. *MGW, Inc.* (1991) __ U.S. __ [113 L.Ed.2d 235, 111 S.Ct. 1299].) Similarly, our recent decision in *Gourley* v. *State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121 [279 Cal.Rptr. 307, 806 P.2d 1342], as modified, remanded that action to the Court of Appeal for further consideration under *Haslip, supra,* 499 U.S. __.

In light of our holding in the present case that the punitive damages award must be set aside because of the absence of financial evidence, we need not now decide, and do not decide, whether the traditional California "passion and prejudice" standard of review is constitutionally sufficient under *Haslip, supra,* 499 U.S. __. Nor do we express any view on that issue.

"In determining the incidence of the burden of proof, 'the truth is that there is not and cannot be any one general solvent for all cases. *It is merely a question of policy and fairness* based on experience in the different situations.' " (Cal. Law Revision Com. com., *supra*, § 500, at p. 431 [Deering's Ann. Evid. Code, *supra*, § 500, at p. 215], quoting 9 Wigmore, Evidence (3d ed. 1940) § 2486, p. 275, italics added.) These bedrock concerns—policy and fairness—support placing the burden on a plaintiff to prove a defendant's financial condition. The very nature of punitive damages points to this conclusion. Whatever his or her injury, a plaintiff will be made whole by the award of compensatory damages. An award of punitive damages, though perhaps justified for societal reasons of deterrence, is a boon for the plaintiff. "Such damages constitute a windfall . . . ." (*Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, 750 [168 Cal.Rptr. 237]; *Electrical Workers* v. *Foust* (1979) 442 U.S. 42, 50 [60 L.Ed.2d 698, 706, 99 S.Ct. 2121] [also referring to punitive damages as "windfall recoveries"].) "[I]t is indeed an anomaly to find that in any case more than full compensation may be awarded him [the plaintiff]." (*Davis* v. *Hearst* (1911) 160 Cal. 143, 162 [116 P. 530].) The general rule has long been that "He who takes the benefit must bear the burden." (Civ. Code, § 3521.) It is not too much to ask of a plaintiff seeking such a windfall to require that he or she introduce evidence that will allow a jury and a reviewing court to determine whether the amount of the award is appropriate and, in particular, whether it is excessive in light of the central goal of deterrence. As explained above, evidence of the defendant's financial condition is crucial to that determination.

The potential unfairness of imposing the burden on the defendant becomes even more clear when considered in light of trial practice reality. The issue is not merely a question of trial strategy. As our former colleague Justice Peters aptly put it, "The trial of a law suit is not a game where the spoils of victory go to the clever and technical regardless of the merits, but a method devised by a civilized society to settle peaceably and justly disputes between litigants. The rules of the contest are not an end in themselves." (*Simon* v. *City & County of San Francisco* (1947) 79 Cal.App.2d 590, 600 [180 P.2d 393].) An award of punitive damages can be a matter of economic life or death for a defendant. The "game" theory of litigation is particularly inappropriate when the *public* interest is at stake.

If the plaintiff does not introduce evidence of the defendant's finances, the only alternative source of the information is the defendant. It is inherently prejudicial to require a defendant to introduce evidence of personal finances. Doing so places a defendant in the position of bidding against himself or herself. A defendant in that position is forced to tell the jury in effect that: "My conduct doesn't warrant punitive damages. But, by the way, if you disagree, please be gentle, I'm worth only the following amount." Such an

approach has the not unexpected effect of suggesting to the jury that the defendant is admitting punitive damages should be assessed. Put colloquially, the jury is led to think," This person must know he deserves a beating or else he would not be pleading poverty." Under current Civil Code section 3295, subdivision (d), the jury is asked to decide *at the same time* whether to impose punitive damages *and*, if so, in what amount. (See also BAJI No. 14.72.2, *supra*, at p. 66.) Requiring a defendant to prove his or her own financial condition may improperly taint the jury's decision whether to impose punitive damages in the first instance. The defendant's only alternative is to remain silent as to personal finances and run the risk of being annihilated financially.

It is simply unfair and unnecessary to put the defendant in this "damned if you do, damned if you don't" position. A commonly used practice guide for attorneys (authored in part by former Justice Kaufman of this court) illustrates the problem. "PRACTICE POINTER FOR DEFENSE: The insurer [defendant] should be careful about presenting 'mitigating' evidence as to its financial condition. The jury may regard it as a tacit admission that some award of punitive damages is appropriate. Quibbles as to its finances could be viewed as 'just one more instance of insurer cover-up!' " (Kornblum, Cal. Practice Guide: Bad Faith (The Rutter Group 1989) ¶ 11.236, p. 11-66, italics in original.) We need not blind ourselves to this reality of trial dynamics that is well understood by the bar and our colleagues on the trial bench.

The prejudice in this case was exacerbated because it was tried before Civil Code section 3295 was amended to provide for bifurcation. Under the current procedure, the jury first decides whether to impose liability for compensatory damages and whether the defendant acted with fraud, oppression, or malice. (Civ. Code, § 3295, subd. (d); see also BAJI No. 14.72.1 (1989 re-rev.) (7th ed. 1991 pocket pt.) p. 64.) Only after finding such misconduct, is the jury then asked to decide whether to impose punitive damages and, if so, in what amount. As explained in the preceding paragraph, there is a serious risk of prejudice to the defendant under this scheme if the defendant is required to prove its own finances. The risk, of course, was greater under former Civil Code section 3295 because it made no provision for bifurcation. Under plaintiff's view, Dr. Murakami would have had to introduce evidence of his finances even before the jury decided whether he was liable for compensatory damages. The Association for California Tort Reform, appearing as amicus curiae on behalf of defendant, well states the point: "According to plaintiff, if defendant had any substantial net worth, he also had but a Hobson's choice in a trial where liability and penalty were to be decided in the same hearing: evidence of his financial condition could be introduced with the likely result that it would inflame the passion and prejudice of the jury to tip their judgment in favor of liability."

Putting the defendant in this untenable situation is analytically similar to imposing on the defendant the burden of contesting liability for compensatory damages while simultaneously proving the amount of compensatory damages that should be awarded. That, of course, is not the law. A plaintiff must prove the amount of compensatory damages to which he or she is entitled.

Consideration of the question from the plaintiff's perspective also leads to the conclusion that the burden is properly hers. Unlike the defendant, the plaintiff faces no risk. As one practice guide for attorneys explains in plain language, "Plaintiff's counsel has everything to gain and nothing to lose by utilizing the rule that permits (and if the verdict is high) compels introduction of the defendant's wealth." (Riley, Proving Punitive Damages: The Complete Handbook, *supra*, § 9.15, at pp. 6-7; see also Kornblum, Cal. Practice Guide: Bad Faith, *supra*, § 11.235, at p. 11-66 [explaining benefit to plaintiff of introducing the evidence].) Perhaps a plaintiff might want to keep from a jury the evidence of a defendant's financial resources if they were meager and thus might lead to a small punitive damages award. In that circumstance, however, the plaintiff would be deliberately seeking an award disproportionate (or at least unrelated) to the defendant's ability to pay. That result, of course, is contrary to the public purpose of punitive damages.

Moreover, under Civil Code section 3295, subdivision (c), the plaintiff is allowed, on a proper showing, to "subpoena documents or witnesses to be available at the trial for the purpose of establishing the profits or financial condition" of the defendant. The plaintiff may also obtain pretrial discovery of that information. "Like the Colt revolver made all men in the west the same size, discovery procedures reduce the advantage the giant corporations [or any other defendant] otherwise have over the individual plaintiff in litigation, and if the goal is a large verdict, such discovery procedures should not be used sparingly." (Riley, Proving Punitive Damages: The Complete Handbook, *supra*, § 9.16, at p. 102.) We see no reason why it is even slightly unfair to require a plaintiff to use the procedures available.

The apparent legislative intent underlying the punitive damages statutes is also consonant with having plaintiff assume this responsibility. At the time this case was tried (July 1987), Civil Code section 3295, subdivision (a) provided that the trial court could grant a defendant a protective order requiring the plaintiff to prove a prima facie case of punitive damages liability before being allowed to introduce evidence of the defendant's profits or financial condition. This provision, though not directly on point, reflects a legislative awareness that the plaintiff is the party who must introduce such evidence. By setting forth the procedure for the plaintiff to do so, the Legislature acknowledged that the orthodox practice had long been

for plaintiffs, not defendants, to prove a defendant's financial condition. Indeed, the Legislature's awareness of this reality is reflected in the 1980 amendments to Civil Code section 3295 regarding introduction of evidence of a defendant's financial condition. The Legislative Counsel's Digest to Senate Bill No. 227 (1979-1980 Reg. Sess.), which gave rise to the amendments, stated, "In general, the application of *this provision is governed by case law which generally provides that the plaintiff has the burden of proof . . . .*" (Legis. Counsel's Dig., Sen. Bill No. 227, 4 Stats. 1979 (Reg. Sess.) Summary Dig., p. 227, italics added.) It seems clear enough that, to the extent the Legislature gave any thought to the burden of proof, the assumption was that the burden always had belonged to plaintiffs and would remain theirs.

Subsequent amendments to Civil Code section 3295, though not applicable to this case, reinforce the conclusion that the Legislature was aware of the traditional allocation of burden of proof. Subdivision (d) was added to section 3295 of the Civil Code effective January 1, 1988. It states, "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294." (Stats. 1987, ch. 1498, § 6, pp. 5781-5782.) On its face, this amendment does not purport to address the precise question before us. The provision, however, does clearly illustrate the Legislature's awareness that plaintiffs, rather than defendants, seek to introduce financial evidence. More important, Civil Code section 3295 offers no support, not even a suggestion, for the view that defendants bear the burden of introducing such evidence. If *defendants* had that burden, the provisions regulating *plaintiffs'* introduction of the evidence would be meaningless. ■ We do not presume that the Legislature engages in idle acts. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054].)

■■ In summary, Evidence Code section 500 and consideration of fundamental fairness lead to the conclusion that a plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition. A defendant should not be required to justify the amount of the award he or she is seeking to avoid.

### DISPOSITION

The judgment of the Court of Appeal is reversed to the extent that it affirmed the award of punitive damages. The Court of Appeal is directed to

remand this action to the trial court for further proceedings in accord with this opinion. Defendant is awarded his costs on appeal.

Lucas, C. J., Panelli, J., and Arabian, J., concurred.

**KENNARD, J.,** concurring.—I concur in the judgment. I agree that evidence of a defendant's financial condition is a prerequisite to an award of punitive damages, and that the burden is on the plaintiff to introduce such evidence.

In my view, however, we should not address any constitutional questions in this case. I write separately, therefore, to emphasize that I do not join in the majority's unnecessary discussion of the United States Supreme Court's decision in *Pacific Mut. Life Ins. Co.* v. *Haslip* (1991) 499 U.S. __ [113 L.Ed.2d 1, 111 S.Ct. 1032].

California courts have long adhered to the policy that constitutional questions ordinarily should be reached only if the matter at hand cannot otherwise reasonably be resolved. (*Estate of Johnson* (1903) 139 Cal. 532, 534 [73 P. 424]; accord, e.g., *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 90 [270 Cal.Rptr. 817, 793 P.2d 23].) Because the power of the courts to declare a law or practice unconstitutional is an "ultimate power," resort to decision on constitutional grounds when other bases for decision are present generally should be avoided in the exercise of appropriate judicial self-restraint. (E.g., *Syrek* v. *California Unemployment Ins. Appeals Bd.* (1960) 54 Cal.2d 519, 526 [7 Cal.Rptr. 97, 354 P.2d 625].) This prudent judicial policy also counsels against judicial explications of constitutional issues that do not amount to separate bases for decision.

The majority's discussion of the nonconstitutional grounds for holding that a plaintiff must introduce evidence of a defendant's financial condition as a prerequisite to an award of punitive damages adequately resolves the issue here. Any analysis by this court of the effect of *Pacific Mut. Life Ins. Co.* v. *Haslip, supra,* 499 U.S. __, on California law should await a case in which that decision's constitutional ramifications for California law are plainly at issue, and have been raised, briefed and determined in the trial and appellate courts.

**MOSK, J.**—I dissent.

No doubt there are those whose high hopes of ridding the world of what they apparently perceive to be a social menace were dashed when the Supreme Court recently upheld the constitutionality of punitive damages in *Pacific Mut. Life Ins. Co.* v. *Haslip* (1991) 499 U.S. __ [113 L.Ed.2d 1, 111 S.Ct. 1032] (hereafter *Haslip*). However, the majority's alternate route to

impede a plaintiff's access to such damages ignores California's present system for ordering and reviewing punitive damage awards. A brief review of our system may be helpful.

Punitive damage awards have been statutorily authorized in California since 1872. At the time of trial, Civil Code section 3294, subdivision (a), provided: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."[1] Section 3295 provided, "(a) The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of: [¶] (1) The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence. [¶] (2) The financial condition of the defendant. [¶] . . . [¶] (c) No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) unless the court enters an order permitting such discovery pursuant to this subdivision. . . . Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294. . . ."

The Legislative Counsel's Digest to Senate Bill No. 227 (1979-1980 Reg. Sess.), adding section 3295, stated that the application of section 3294 was at that time governed by case law providing, "the plaintiff has the burden of proof, that proof is by a preponderance of the evidence, and *permits* the consideration of various factors in determining the amount of the award." (Italics added.) It appears from this statement that the Legislature recognized that a plaintiff was *permitted*, but not compelled, to introduce evidence of the defendant's profits and financial condition, and attempted to protect defendants by limiting the plaintiff's pretrial discovery of such information. (See *Rawnsley* v. *Superior Court* (1986) 183 Cal.App.3d 86, 91 [227 Cal.Rptr. 806] ["These safeguards were designed to protect the defendant from a specific type of discovery abuse: a situation in which the plaintiff puts forth an easily alleged cause of action for punitive damages, thus requiring a

---

[1]The section now provides that the plaintiff must prove that the defendant has been guilty of oppression, fraud, or malice by clear and convincing evidence. (Civ. Code, § 3294, subd. (a).)

Unless otherwise noted, all further statutory references are to the Civil Code.

defendant to expend the time and money 'necessary to the compilation of a complex mass of information unrelated to the substantive claim involved in the lawsuit and relevant only to the subject matter of a measure of damages which may never be awarded.' "].)

In California, whether punitive damages should be awarded and the amount of such an award are issues left to the jury's discretion. Under our statutes the plaintiff introduces evidence proving that the defendant is guilty of oppression, fraud, or malice. The plaintiff may also introduce evidence bearing on the amount of the award. The jury is then instructed that it may award punitive damages against the defendant "for the sake of example and by way of punishment" if "you find by a preponderance of the evidence that said defendant was guilty of oppression, fraud or malice in the conduct on which you base your finding of liability." (BAJI No. 14.71 (6th ed. 1984 pocket pt.).) The jury is also instructed that the amount of the award is left to its sound discretion, exercised without passion or prejudice, and in fixing that amount it is to consider the following: "(1) The reprehensibility of the conduct of the defendant; (2) The amount of punitive damages which will have a deterrent effect on the defendant in the light of defendant's financial condition; and (3) That the punitive damages must bear a reasonable relation to the actual damages." (*Ibid.*)

A reviewing court will reverse an award of punitive damages as excessive only if " 'the entire record, when viewed most favorably to the judgment, indicates [it was] rendered as the result of passion and prejudice.' " (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 927 [148 Cal.Rptr. 389, 582 P.2d 980] [hereafter *Neal*].) Three factors, each grounded in the purpose and function of punitive damages, guide this determination: "One factor is the particular nature of the defendant's acts in light of the whole record; clearly, different acts may be of varying degrees of reprehensibility, and the more reprehensible the act, the greater the appropriate punishment, assuming all other factors are equal. [Citations.] Another relevant yardstick is the amount of compensatory damages awarded; in general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small. [Citation.] Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. [Citations.] By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." (*Id.* at p. 928.)

Clearly our system *permits* but does not *compel* the plaintiff to introduce evidence of the defendant's financial condition to sustain a punitive damages

award. This was the Legislature's choice. The majority focus on the effectiveness of the appellate review process, but ignore the fact that punitive damages issues must be decided in the first instance by the *jury* and its award is presumed correct. I remain unconvinced of the need to reform this system by judicial fiat.

First, I disagree at the outset with the majority's characterization of our decision in *Neal*. There we concluded that an award of punitive damages was not excessive as a matter of law. In so doing, we recognized and took guidance from "certain established principles." (21 Cal.3d at p. 928.) Contrary to the majority's reading of *Neal*, we did not set forth "criteria" that must be examined to determine whether punitive damages should be awarded; instead, we simply recognized factors to guide an appellate's court determination of whether the jury's award was a result of passion and prejudice. The distinction is clear. To determine (1) whether the jury should have awarded punitive damages, the reviewing court inquires whether there was sufficient evidence to show that the defendant acted with malice, oppression, or fraud. (See *id.* at pp. 922-923.) But to determine (2) whether the jury's award of punitive damages was excessive, the reviewing court inquires whether the award was the result of passion and prejudice. Although *Neal* declares that evidence of the defendant's financial condition may be relevant to the latter determination, it does not declare either expressly or impliedly that it is relevant to the former, nor does the opinion place the burden on the plaintiff. Indeed, the *Neal* court upheld substantial punitive damages.

Nor do the other cases cited by the majority suggest that evidence of the defendant's financial condition must be introduced to sustain an award of punitive damages. The dispositive issue in those cases was not whether evidence of the defendant's financial condition was essential and by whom it had to be offered, but rather whether the award was objectively excessive.

The majority's reliance on a handful of cases that decide to the contrary fails to persuade. Rather, I agree with the more recent decision, *Fenlon* v. *Brock* (1989) 216 Cal.App.3d 1174 [265 Cal.Rptr. 324], in which the court expressly rejected *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262 [262 Cal.Rptr. 311], on a number of grounds. (*Fenlon* v. *Brock, supra*, 216 Cal.App.3d at pp. 1180-1182.) Included in these grounds was the court's apt observation that to require the plaintiff to introduce evidence of the defendant's financial condition to preserve meaningful appellate review *for the defendant* is unprecedented: "It is not the duty of a litigant to create a record for an opponent's potential appeal." (*Id.* at p. 1182.) Curiously, that is precisely what the majority order in the instant case.

Moreover, I cannot so easily dismiss the multitude of California cases reaching a conclusion contrary to *Dumas*. The majority attempt to do so by criticizing the seminal decision on which these cases are based, *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733]. Their criticism, however, proves hollow.

The majority first state that the *Hanley* court's consideration of the issue was minimal. Yet the court gave the issue the limited attention it deserved and failed to cite contrary authority only because no contrary authority apparently existed at the time. (See *Hanley* v. *Lund, supra,* 218 Cal.App.2d at p. 646 ["Since no authority, anywhere, expressly directs that the plaintiff must introduce evidence of defendant's wealth when seeking exemplary damages, we find no merit in defendant's contention in this regard."].) The majority also try to distinguish the case on the ground of its "unique rationale," i.e., that the parties had inferentially stipulated away the issue of the defendant's net worth. However, our case is in precisely the same posture: defendant *did not* raise the issue of the excessiveness of the award in light of his financial condition either in the trial or the appellate court.[2] Finally, the majority imply that *Neal* in effect overruled *Hanley*. As explained above, *Neal* did no such thing.

Contrary to the majority's further implication, the vast majority of our sister jurisdictions are in accord with *Hanley* and its progeny. (See, e.g., *Smith* v. *Lightning Bolt Productions, Inc.* (2d Cir. 1988) 861 F.2d 363, 373; *Tolliver* v. *Amici* (7th Cir. 1986) 800 F.2d 149, 151; *Anderson* v. *Latham Trucking Co.* (Tenn. 1987) 728 S.W.2d 752, 754; *Fahrenberg* v. *Tengel* (1980) 96 Wis.2d 211 [291 N.W.2d 516, 527]; *Rinaldi* v. *Aaron* (Fla. 1975) 314 So.2d 762, 765 [79 A.L.R.3d 1132]; *Poeta* v. *Sheridan Point Shopping Plaza* (1990) 195 Ill.App.3d 852 [552 N.E.2d 1248, 1251]; *Elam* v. *Alcolac, Inc.* (Mo.Ct.App. 1988) 765 S.W.2d 42, 223, fn. 102.) There is no persuasive reason for California to depart from this impressive company.

The majority engage in creative lawyering when they attempt to employ the recent United States Supreme Court opinion upholding punitive damages in *Haslip* to support their position; it lacks all relevance. First, the dispositive issue in that case was the constitutionality of Alabama's system for the award and review of punitive damages. That scheme significantly differs from the procedure in California. Although the purpose of punitive damages—to punish and deter—is the same, in Alabama the jury is not allowed to

---

[2]The majority state that plaintiff's argument "rings hollow" because she asked that the jury be instructed to base its punitive damages award on defendant's financial condition. Plaintiff requested, however, the *standard* punitive damages instruction. If anyone's argument "rings hollow" it would be that of defendant, who failed to submit any information about his financial condition to plaintiff or to the court.

consider the defendant's financial condition; rather, the information is introduced at a postjudgment "critique" of the award. (*Green Oil Co.* v. *Hornsby* (Ala. 1989) 539 So.2d 218, 222.) Implicit in the Alabama system is a recognition that the jury's knowledge of the defendant's financial condition is not a prerequisite to a valid award of punitive damages, i.e, an award that is appropriate to punish and deter.

Second, the defendant in *Haslip* argued that its financial condition should not be considered even on postjudgment review. (See *Arguments Before the Court* (Oct. 30, 1990) 59 U.S.L. Week 3315, 3316 [*defendant* argues that to consider its wealth "only insures that multi-million dollar awards will happen"].) The Supreme Court appeared to be sympathetic to this argument: "While punitive damages in Alabama may embrace such factors as the heinousness of the civil wrong, its effect upon the victim, the likelihood of its recurrence, and the extent of defendant's wrongful gain, the *fact finder must be guided by more than the defendant's net worth. Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket.*" (*Haslip, supra,* 499 U.S. at p. ___ [113 L.Ed.2d at p. 22, 111 S.Ct. at p. 1045, italics added.) This statement implies the court's belief that the issue of the defendant's financial condition should be deemphasized.

In summary, neither California's statutory scheme involving punitive damages, nor case law, nor the Supreme Court's opinion in *Haslip* supports the majority's position that the introduction of evidence of the defendant's financial condition is *necessary* to sustain an award of punitive damages. It follows that neither party bears a burden to introduce this evidence. I will, nevertheless, briefly state my objections to placing the burden of proof on the plaintiff.

First, the concept of "burden of proof" is not relevant in considering the relationship between a defendant's financial condition and the amount of the punitive damages award. The governing statutes and case law make clear that a plaintiff has the burden of proof only on the elements of the plaintiff's own cause of action; thus to support an award of punitive damages the plaintiff need prove only that the defendant acted with oppression, fraud, or malice. (§ 3294, subd. (a).)

The majority's arguments that the legislative history and wording support their position are disingenuous. It is first claimed that section 3295, subdivision (a), reflects a legislative awareness that the plaintiff is the party who must introduce evidence of the defendant's financial condition. As stated previously, however, the cited provision is more correctly interpreted as an effort to *protect defendants* by limiting the plaintiff's pretrial discovery of

such information. In addition, the majority quote the Legislative Counsel's Digest statement that "the plaintiff has the burden of proof" completely out of its context. The digest in fact states that the application of section 3294 was at the time governed by case law providing that "the plaintiff has the burden of proof, that proof is by a preponderance of the evidence, and permits the consideration of various factors in determining the amount of the award." The Legislature was obviously referring to the plaintiff's burden of proving oppression, fraud or malice, rather than any burden of proving the defendant's financial condition.

As a last resort, the majority assert that "fundamental fairness" requires the plaintiff to introduce evidence of the defendant's financial condition. In placing this burden on the plaintiff, presumably the majority believe they are being fundamentally fair to defendants. Indeed, in their opinion they rely on a *defense-oriented* practice guide (maj. opn., *ante*, at p. 121).

But is it fundamentally fair not merely to permit, but actually to *compel*, the plaintiff to probe into and to expose to the world the finances of the defendant: bank accounts and their balance, loans, real property and its value, stocks, bonds and other investments, and any other assets the defendant has or anticipates? If this requirement, this compulsory invasion of privacy, is being fundamentally fair to defendants, one wonders what the majority would consider to be unfair.

To compel the plaintiff to introduce evidence of the financial condition of the defendant would surely result in increased pretrial discovery of the defendant's finances, with all its attendant burdens on the defendant. (See *Rawnsley* v. *Superior Court, supra*, 183 Cal.App.3d 86, 91 [section 3295 was "designed to protect the defendant from a specific type of discovery abuse: a situation in which the plaintiff puts forth an easily alleged cause of action for punitive damages, thus requiring a defendant to expend the time and money 'necessary to the compilation of a complex mass of information unrelated to the substantive claim involved in the lawsuit and relevant only to the subject matter of a measure of damages which may never be awarded.' "].)

Moreover, to require the plaintiff to introduce evidence of the defendant's financial condition would increase the danger that the jury will focus on this information rather than on the issue of the defendant's liability for oppression, fraud or malice. A wealthy defendant would likely be prejudiced as a result. (See *Farmy* v. *College Housing, Inc.* (1975) 48 Cal.App.3d 166 [121 Cal.Rptr. 658] [judgment awarding compensatory and punitive damages reversed because evidence of defendant's wealth introduced by plaintiff prejudiced jury on compensatory damages issue]; *West* v. *Johnson & Johnson*

*Products, Inc.* (1985) 174 Cal.App.3d 831 [220 Cal.Rptr. 437, 59 A.L.R.4th 1] [defendant challenged punitive damages award on ground that evidence of parent corporation's financial status was admitted].)

As the law stood until today, a defendant of substantial means could sit back and hope that the jury, even though it finds him guilty of oppression, fraud or malice, will not emphasize the extent of his resources. On the other hand, a defendant of lesser means could safely listen to the testimony, assess how well the plaintiff's case was proceeding, and make a reasoned determination whether to introduce evidence of his modest financial circumstances in order to minimize the amount of any potential award. Now, however, this court gives a defendant no choice in the matter: the plaintiff is required to make the defendant's wealth a major issue in the trial.

Thus, to spare defendant in this case a punitive damages award that was deemed appropriate by a trial jury, a trial judge and a Court of Appeal, this court now indulges in judicial legislating that will inevitably inure to the detriment of countless future defendants.

I would affirm the judgment of the Court of Appeal.

Stone (Steven J.), J.,* concurred.

---

*Presiding Justice, Court of Appeal, Second Appellate District, Division Six, assigned by the Chairperson of the Judicial Council.