97 F.3d 1458
 25 Media L. Rep. 1379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rodney DANGERFIELD, Plaintiff-Appellant,
v.
STAR EDITORIAL, INC., a corporation; GP Group, Inc., a
corporation; the National Enquirer, Inc., a corporation;
Distribution Services, Inc., a corporation; Barry Levine,
an individual; David Lafontaine, an individual, Defendants-Appellees.
 No. 95-55387.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1996.
Decided Sept. 5, 1996.
 
 1
 Before: BRUNETTI and RYMER, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Rodney Dangerfield appeals the district court's denial of his motion for a new trial and motion for leave to amend his complaint in his libel suit against appellees Star Editorial, Inc. ("Star") and GP Group, Inc. ("GP")[1]. We have jurisdiction over this timely appeal. 28 U.S.C. § 1291. We affirm.
 
 
 4
 I. Background.
 
 
 5
 The September 20, 1990 issue of Star Magazine contained an article about Rodney Dangerfield, a well known comedian, headlined "Vegas Casino Accuses Caddyshack Funnyman: Rodney Dangerfield Swills Vodka by the Tumblerful, Smokes Pot All Day and Uses Cocaine." Appellant Dangerfield filed a libel suit against Star and GP (Star's parent corporation). Star publishes Star Magazine. The complaint listed Star and GP as separate entities and did not allege an alter ego theory.
 
 
 6
 The district court held a bench trial during January 1995. After the presentation of the plaintiff's case, appellees made a motion for judgment on partial findings.[2] The district court denied the motion as to Star, but granted the motion as to GP. The district court found no evidence that GP took a responsible part in causing the article to be published, so GP was not liable for the libel. Consequently, the district court dismissed GP on the merits. As to Star, the district court found that Dangerfield showed by clear and convincing evidence that the defamatory material was false and that Star acted with at least reckless disregard of the truth when it published fabricated anecdotes. The district court found liability against Star.
 
 
 7
 As to damages, the district court stated that Dangerfield did not seek special damages and had therefore waived special damages. The district court found that Dangerfield failed to show that the article caused him extensive emotional distress. The district court awarded Dangerfield damages for emotional distress in the nominal amount of one dollar. The district court found that Dangerfield failed to prove that the article caused extensive damage to his reputation, and awarded actual damages in the nominal amount of one dollar. The district court awarded $45,000 in presumed damages. The district court did not award punitive damages because it found that Dangerfield failed to submit evidence showing that the financial net worth of Star would allow the imposition of punitive damages.
 
 
 8
 Dangerfield filed a motion for a new trial pursuant to Fed.R.Civ.P. 59(a) and (e) and a motion for leave to amend the complaint. The district court denied the motion for a new trial stating that its ruling was not contrary to the weight of the evidence that was presented at trial and the relevant law at the time. The district court denied the motion for leave to amend the complaint on the basis that Dangerfield failed to show that appellees implicitly consented to litigate under the alter ego theory.
 
 
 9
 II. Post-Judgment Motion to Amend the Complaint.
 
 
 10
 Dangerfield argues that the district court erred by denying his post-judgment motion to amend his complaint under Federal Rule of Civil Procedure 15(b). He argues that the issue of alter ego was tried with implied consent of appellees and that he introduced, without objection, evidence of an alter ego relationship between Star and GP.
 
 
 11
 A district court's order denying a Rule 15(b) motion to conform the pleadings to the evidence is reviewed for an abuse of discretion. Campbell v. Trustees of Leland Stanford Jr. Univ., 817 F.2d 499, 506 (9th Cir.1987). Under Fed.R.Civ.P. 15(b), "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b). "To establish implied consent, the [plaintiff] must demonstrate that [the defendant] understood evidence had been introduced to prove [the new issue], and that [the new issue] had been directly addressed, not merely inferentially raised by incidental evidence." In re Acequia, Inc., 34 F.3d 800, 814 (9th Cir.1994) (quoting Lalonde v. Davis, 879 F.2d 665, 667 (9th Cir.1989)). Furthermore, "[w]here evidence alleged to have shown implied consent was also relevant to the other issues at trial, it cannot be used to imply consent to try the unpleaded issue." Id. (quoting Dole v. Mr. W Fireworks, Inc., 889 F.2d 543, 547 (5th Cir.1989), cert. denied 495 U.S. 929 (1990)) (internal quotations omitted).
 
 
 12
 The complaint does not allege alter ego theory. The jointly filed Pre-Trial Conference Order does not list alter ego as an issue of law or fact to be litigated at trial. Dangerfield primarily refers this Court to David Galpern's deposition. This deposition does not show that there was implied consent to litigate alter ego. The evidence brought out in the deposition was also relevant to other issues in the trial. Pursuant to In re Acequia, GP and Star did not implicitly consent to litigating alter ego. Only on appeal does Dangerfield present his alter ego arguments. The district court did not abuse its discretion by denying Dangerfield's post-judgment motion to amend his complaint to allege liability on an alter ego theory.
 
 
 13
 III. Federal Rule of Civil Procedure 52(c).
 
 
 14
 Dangerfield contends that the district court erred in denying his motion for a new trial because the evidence established that GP is directly liable as playing a responsible part in the publication of the article; GP is liable under the doctrine of respondeat superior as the "de facto" employer; and GP is liable based on principles of agency. In reviewing a judgment entered pursuant to Rule 52(c) following a bench trial, this Court reviews the district court's findings of fact for clear error and its legal conclusions de novo. Price v. U.S. Navy, 39 F.3d 1011, 1019 (9th Cir.1994).
 
 
 15
 Since it was stipulated that Dangerfield is a public figure, he must prove by clear and convincing evidence that each defendant published the defamatory statement with actual malice, "i.e., with knowledge that it was false or with reckless disregard of whether it was false or not." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510 (1991) (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)) (internal quotations omitted). A plaintiff must prove reckless disregard (or malice) with respect to each defendant, including the publisher. See Cantrell v. Forest City Pub. Co., 419 U.S. 245 (1974).
 
 
 16
 Dangerfield seems to argue that simply because GP published the article, it is necessarily liable. But under Cantrell, publication alone is not enough; rather, Dangerfield must also prove that GP acted with malice. We have reviewed the record and agree that there is no evidence that GP acted with malice. The editorial responsibility was strictly with Star. There is no evidence that GP had any involvement at all in the investigation of, writing of, fact checking or other editing of the article. At most the evidence shows that GP supervised the non-editorial aspects of publishing and distributing Star Magazine.
 
 
 17
 To the extent that Dangerfield is attempting to impute Star Magazine's malice to GP, either under a respondeat superior or agency theory, those arguments also lack merit and seem largely premised on an alter-ego finding, which, as set forth above, was not tried to the district court.
 
 
 18
 IV. Punitive Damages.
 
 
 19
 Dangerfield argues that the district court erroneously interpreted California law when it did not impose punitive damages on appellee Star. The district court found that Dangerfield failed to submit evidence showing that the financial net worth of Star would allow the imposition of punitive damages because punitive damages ordinarily rest on the defendant's net worth.
 
 
 20
 Dangerfield's argument that the district court erroneously used the "net worth" standard instead of the financial condition of Star is meritless. See Kenly v. Ukegawa, 19 Cal.Rptr.2d 771, 777 (Cal.App.1993) (discussing that a "net worth" approach to assessing the financial condition is appropriate). "Three factors are to be evaluated in assessing punitive damages: (1) the reprehensibility of a defendant's conduct; (2) proportionality: whether the amount of the award bears a reasonable relationship to the damage actually suffered by plaintiff; and (3) whether the award is reasonable in light of defendant's financial condition." Kenly, 19 Cal.Rptr.2d at 775 n. 5. The only issue presented in this case is whether the district court properly considered Star's financial condition.
 
 
 21
 Dangerfield has the burden of proof to establish Star's financial condition. See Adams v. Murakami, 284 Cal.Rptr. 318, 327 (Cal.1991) (placing burden of introducing the evidence of financial condition on plaintiff).
 
 
 22
 Dangerfield presented the following evidence of Star's financial condition[3]: (1) testimony from a deposition of Star's Chief Financial Officer, David H. Galpern; (2) Star's Financial Statement; (3) GP's Prospectus; (4) circulation audit report of Star Magazine; (5) list of officers and directors of GP and its subsidiaries; (6) GP's SEC 10-k form; and (7) GP/AMOI's financial statements. Star's Statement of Operations for the fiscal year ending March 28, 1994 reflected a net loss. GP/AMOI has no balance sheets that isolate Star. The evidence demonstrates Star's net worth is at a net loss.
 
 
 23
 Dangerfield contends that the evidence related to GP's financial condition is relevant to Star's financial condition. As to the propriety of including the parent company's financial condition, in Tomaselli v. Transamerica Ins. Co., 31 Cal.Rptr.2d 433 (Cal.App.1994), reh'g denied, review denied, the plaintiff failed to present evidence of the financial condition of a subsidiary company, the defendant. Id. at 441. The only evidence the plaintiff presented was the parent company's annual consolidated report. Id. The Tomaselli court found that this evidence was not sufficient to support an award of punitive damages against the subsidiary. Id. The Tomaselli court also rejected the argument that the award supported the theory that the subsidiary and the parent companies were alter egos. Id. at 442. It reasoned that the issue of alter ego was not litigated or decided at trial. Id.
 
 
 24
 Similar to Tomaselli, alter ego was not litigated or decided at trial. Including GP's financial condition in the determination of punitive damages for Star is not appropriate. Dangerfield's introduction of GP's net worth, without isolating Star's balance, cannot sustain punitive damages without litigating alter ego. See id. at 441. Furthermore, the district court dismissed GP from the action on the merits. Given that the evidence presented showed that Star operated at a net loss, Dangerfield failed to establish Star's ability to pay punitive damages. The district court did not err when it declined to award punitive damages against Star.
 
 
 25
 V. Motion for New Trial.
 
 
 26
 Dangerfield contends that the district court erred in denying his motion for new trial. We review a district court's decision concerning a motion for a new trial for an abuse of discretion. California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1405 (9th Cir.1995). Since the district court did not err in its judgment and refusal to impose punitive damages, the district court did not abuse its discretion in denying Dangerfield's motion for new trial.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Hon. Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 GP Group changed its name to Enquirer/Star, Inc. and then to American Media Operations, Inc. ("AMOI"). The names are used interchangeably
 
 
 [2]
 Appellees called this motion a motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). The district court stated that the motion was more appropriately characterized as a motion for judgment on partial findings pursuant to Fed.R.Civ.P. 52(c)
 
 
 [3]
 Appellees stated in their brief that Star would have introduced evidence of its insurance to compensate any persons foreseeably damaged by its publications had alter ego been litigated. Dangerfield contends that had the district court been aware of the insurance policy, it would have awarded punitive damages. Because this information is not in the record, we do not consider it