[No. D047231. Fourth Dist., Div. One. Nov. 22, 2006.]

MICHAEL R. KELLY, Plaintiff and Respondent, v.
JEFFREY L. HAAG, Defendant and Appellant.

### COUNSEL

Law Offices of Michael G. York and Michael G. York for Defendant and Appellant.

Luce, Forward, Hamilton & Scripps and Christopher H. Findley for Plaintiff and Respondent.

### OPINION

**McCONNELL, P. J.**—In this fraud case, the issue on appeal is whether substantial evidence supports the trial court's assessment of $75,000 in punitive damages against defendant Jeffrey L. Haag. We conclude the evidence does not support the award, and thus we reverse the judgment in part. We reject plaintiff Michael R. Kelly's assertion he is entitled to a retrial on punitive damages.

## BACKGROUND

The underlying facts are undisputed. Haag and Kelly were formerly good friends. Haag is a licensed contractor, and he represented to Kelly that his company, JLH Ventures, Inc. (JLH), carried liability insurance. Based on the representation, Kelly agreed to pay Haag $50,000 to perform construction management services at his condominium in downtown San Diego. In turn, Haag hired JLH to perform demolition work for $9,500.

During demolition, one of JLH's workers broke a fire sprinkler head. It leaked for 15 to 20 minutes because the worker did not know where the water shutoff valve was. Kelly's condominium was flooded, and there was also damage to the units of owners who lived below Kelly. After the incident Haag confessed that JLH was actually uninsured.

Kelly fired Haag and sued him and JLH for fraud and negligence, among other causes of action not relevant here. During a bench trial on July 5, 2005, Haag did not attend but he was represented by counsel. The court found Haag liable for negligence and fraud, and JLH liable for negligence. The court assessed $159,140.22 in compensatory damages against Haag and JLH on a joint and several basis. The court also assessed $75,000 in punitive damages against Haag individually, finding he had a minimum net worth of $750,000. Kelly submitted no evidence of Haag's net worth and relied exclusively on admissions Haag had made long before trial regarding his real properties. Judgment was entered on July 25, 2005.

## DISCUSSION

### I

#### *Overview of Punitive Damages Law*

An award of punitive damages hinges on three factors: the reprehensibility of the defendant's conduct; the reasonableness of the relationship between the award and the plaintiff's harm; and, in view of the defendant's financial condition, the amount necessary to punish him or her and discourage future wrongful conduct. (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 & fn. 13 [148 Cal.Rptr. 389, 582 P.2d 980] (*Neal*); *Adams v. Murakami* (1991) 54 Cal.3d 105, 110 [284 Cal.Rptr. 318, 813 P.2d 1348] (*Adams*).) Only the third prong is at issue here.

■ "[O]bviously, the function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. [Citations.] By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth . . . exceeds the level necessary to properly punish and deter." (*Neal, supra,* 21 Cal.3d at p. 928.) The "most important question is whether the amount of the punitive damages award will have deterrent effect—without being excessive. Even if an award is entirely reasonable in light of the other two factors in *Neal, supra,* 21 Cal.3d 910 (nature of the misconduct and amount of compensatory damages), the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone.*" (*Adams, supra,* 54 Cal.3d at p. 111.)

The California Supreme Court has declined to prescribe any particular standard for assessing a defendant's ability to pay punitive damages (*Adams, supra,* 54 Cal.3d at p. 116, fn. 7), but it has held that actual *evidence* of the defendant's financial condition is essential. (*Id.* at p. 119.) A punitive damages award is based on the defendant's financial condition at the time of trial. (*Zhadan v. Downtown Los Angeles Motor Distributors, Inc.* (1979) 100 Cal.App.3d 821, 839 [161 Cal.Rptr. 225]; *Washington v. Farlice* (1991) 1 Cal.App.4th 766, 777 [2 Cal.Rptr.2d 607].)

In *Kenly v. Ukegawa* (1993) 16 Cal.App.4th 49, 57 [19 Cal.Rptr.2d 771], this court held "that in most cases there must be evidence of the defendant's net worth to support the punitive damage award." We explained that in examining assets without examining liabilities, or without "evidence of the entire financial picture," there was a risk of "crippling or destroying the defendant." (*Ibid.*) We further noted we could surmise the defendants had millions in assets, but we could also assume their debts were equally high. "Without evidence of the actual total financial status of the defendants, it is impossible to say that any specific award of punitive damages is appropriate." (*Id.* at p. 58.)

■ In *Lara v. Cadag* (1993) 13 Cal.App.4th 1061, 1065, footnote 3 [16 Cal.Rptr.2d 811], the court concluded that " '[n]et worth' is subject to easy manipulation and, in our view, it should not be the only permissible standard. Indeed, it is likely that blind adherence to any one standard could sometimes result in awards which neither deter nor punish or which deter or punish too much." The court there found that a consideration of income alone does not permit meaningful review and "something more is required." (*Ibid.*)

As the court explained in *Lara v. Cadag, supra*, 13 Cal.App.4th at page 1064, because punitive damages are intended to deter wrongful conduct and not destroy the defendant, "the Supreme Court articulated a standard calling for *meaningful* evidence of a defendant's *financial condition* . . . . [T]he high court consistently speaks in terms of 'financial condition' [citation] or 'net worth' [citation] or the 'defendant's ability to pay.' " (Citing *Adams, supra*, 54 Cal.3d at pp. 110–116.)

▮ Under Evidence Code section 500 and in consideration of fundamental fairness, it is the plaintiff's burden to establish the defendant's financial condition. (*Adams, supra*, 54 Cal.3d at p. 123.) "It is not too much to ask of a plaintiff seeking such a windfall to require that he or she introduce evidence that will allow a jury and a reviewing court to determine whether the amount of the award is appropriate and, in particular, whether it is excessive in light of the central goal of deterrence." (*Id.* at p. 120.) Further, it "is inherently prejudicial to require a defendant to introduce evidence of personal finances." (*Ibid.*)

## II

### *The Award Lacks Evidentiary Support*

### A

Haag contends the evidence is insufficient to support the $75,000 punitive damages award. A substantial evidence standard of review applies, in which all presumptions favor the trial court's findings and we view the record in the light most favorable to the judgment. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1536, fn. 10 [51 Cal.Rptr.2d 311] (*Vallbona*).) "[O]ur review of punitive damage awards rendered at the trial level is guided by the 'historically honored standard of reversing as excessive only those judgments which the entire record . . . indicates were rendered as the result of passion and prejudice. . . .' " (*Neal, supra*, 21 Cal.3d at p. 927.)

Kelly's sister, Louise Kelly, worked for Kelly's real estate development company and oversaw the condominium remodel. She testified that in the fall of 2003, nearly two years before trial, Haag told her he purchased a large home in Fallbrook for approximately $800,000 and he believed "he had about $200,000 in value in that property that was not apparent at the moment." She had no idea how much he put down on the property, but he told her he was taking out loans on it. She had no personal knowledge of whether he still owned the home.

Louise Kelly also testified that Haag had owned a home on Columbia Street in San Diego for eight to 10 years. She never spoke to Haag about his equity in that property and she had no personal knowledge of whether he still owned it. The court noted there was an April 2004 e-mail in which Haag indicated he was selling the Columbia Street property.[1]

Kelly testified that when he and Haag were talking about Kelly's condominium remodel, Haag revealed he was remodeling his Fallbrook property. Haag, however, did not tell Kelly how much he paid for the property or how much debt he had. Haag told Kelly he was "taking a second mortgage on his property on Columbia Street to help pay for his remodel."

Further, Kelly testified that after his condominium flooded, Haag told him he still owned the Columbia Street and Fallbrook homes, and "he wanted to protect his home in Fallbrook, [but] he would give me his Columbia Street" property to cover damages. Haag told Kelly in mid- to late 2004 that he believed he had $400,000 to $500,000 in equity in that property. Kelly also testified that Haag told him he was going to transfer the Fallbrook property "to his wife and they were going to get divorced over this issue."

■ We agree that Kelly did not present meaningful evidence of Haag's financial condition or ability to pay. Further, the court's taking of judicial notice "of the fact that in the last few years property has gone through the roof so to speak," did not rectify the problem as there was no evidence that at the time of trial Haag still owned the Columbia Street and/or Fallbrook properties. Further, even if he did still own the properties, there was no evidence of any encumbrances on the properties at the time of trial, or of other liabilities Haag may have had. Kelly testified that Haag told him he planned to take a second mortgage on the Columbia Street property, and there is no evidence regarding that loan. As the trial court complained, before nonetheless awarding punitive damages, it could only speculate as to Haag's liabilities. Obviously, without any evidence he still held the assets, or of the amounts of his liabilities, the $75,000 award is unsupported by substantial evidence and excessive. Perhaps Haag has sufficient wealth that $75,000 would serve the deterrent purpose of punitive damages without bankrupting him, but there was simply a failure of proof and thus the award cannot stand.

---

[1] Louise Kelly also testified that in the fall of 2003 Haag told her he had single-family rental homes in the Normal Heights area, but she had no financial information on them. She also testified that she knew Haag owned a truck and a motorcycle. It does not appear that the court relied on this testimony in awarding punitive damages, and Kelly does not claim it should have.

## B

Kelly submits the award was proper because there was no evidence of a second mortgage on the Columbia Street property or that such a mortgage "would change the equity in the property to which Haag admitted." Kelly also asserts that if "Haag wanted to appear and testify to different assets or liabilities, he was welcome to do so. Having failed to appear, Haag cannot complain that the evidence of his liabilities should have been different." It was Kelly's burden of proof as to Haag's wealth, however, and he failed to meet it.

Kelly also cites *Vallbona, supra,* 43 Cal.App.4th 1525, for the proposition that a defendant's admissions as to his or her financial condition are sufficient to carry the plaintiff's burden of proof. In *Vallbona,* however, the defendant testified as to his real estate holdings and their net value as well as other assets. (*Id.* at p. 1539.) Haag did not testify at trial, and Kelly obtained no discovery from him. The Haag admissions on which Kelly relies are immaterial as there is no evidence as of the time of trial that Haag still owned the Columbia Street or Fallbrook properties, or of their net value.

*Douglas v. OsterDavid Dey Jansenmeier* (1991) 1 Cal.App.4th 729 [2 Cal.Rptr.2d 594] (*Douglas*), is also unhelpful to Kelly. In *Douglas,* one of the plaintiffs was a real estate agent and broker, and in the punitive damages phase of trial she testified that in her opinion the land value of the defendants' business property was between $5 million and $6 million. The defendants contended the testimony lacked foundation because the plaintiff did not demonstrate expertise in valuing commercial properties. (*Id.* at p. 737.) The Court of Appeal found no abuse of discretion in allowing the plaintiff to testify as an expert, given her qualifications. (*Id.* at p. 738.) Alternatively, the court found the defendant suffered no prejudice as the jury must not have relied exclusively on the testimony in arriving at a punitive damages award of $187,000. (*Id.* at p. 740.)

Kelly asserts that in *Douglas,* "[d]espite the delay between when [the plaintiff] viewed the property and when she rendered her opinion, the court found sufficient basis for her opinion to support an award for punitive damages." The court, however, did not discuss the time element and there is no suggestion that the plaintiff's valuation was not as of the time of trial. In any event, *Douglas* certainly does not stand for the proposition that punitive damages may be based on property the defendant may no longer own at the time of trial.

III

*Appellate Remedy*

Kelly contends that if we reverse the punitive damages award we must remand the matter for a retrial on the issue. Haag contends retrial would be improper because reversal is based solely on insufficiency of the evidence, and Kelly is not entitled to another bite at the apple. Haag asserts we should strike the punitive damages award from the judgment.

■ We agree with Haag's assessment. "When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. . . . Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper. . . . [¶] . . . [A] reversal of a judgment for the plaintiff based on insufficiency of the evidence should place the parties, at most, in the position they were in after all the evidence was in and both sides had rested." (*McCoy v. Hearst Corp.* (1991) 227 Cal.App.3d 1657, 1661 [278 Cal.Rptr. 596]; accord, *Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613, 626–627 [269 Cal.Rptr. 596].) In another context, our Supreme Court explained in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 214 [266 Cal.Rptr. 638, 786 P.2d 365], that "[f]or our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings."

■ Kelly had a full and fair opportunity to present his case for punitive damages, and he does not contend otherwise. Under Civil Code section 3295, subdivision (c), a plaintiff seeking punitive damages may move for a pretrial discovery order pertaining to the defendant's financial condition. Further, even without such an order the plaintiff may subpoena documents or witnesses to be available at trial to establish the defendant's financial condition. (*Ibid.*)[2] The record does not suggest Kelly utilized these procedures. Indeed, after the court found Haag liable for fraud, Kelly's attorney advised he was unprepared to proceed with the punitive damages phase and requested a

---

[2] Civil Code section 3295 was enacted in 1979 to limit the circumstances under which evidence of the defendant's financial condition may be discovered and admitted, authorize bifurcation of the punitive damages phase of the trial, and bar disclosure of the amount of punitive damages sought in the complaint. (Civ. Code, § 3295, subds. (a)–(e).) "The pretrial discovery limits ensure that defendants are not coerced into settling suits solely to avoid unwarranted intrusions into their private financial affairs, while the evidentiary restrictions minimize potential prejudice to the defense in front of a jury." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 712 [34 Cal.Rptr.2d 898, 882 P.2d 894].)

recess of one or two days to produce evidence. The court refused to delay the matter, and Kelly proceeded, relying solely on Haag's oral admissions, discussed above. After Kelly made his punitive damages presentation, the court, concerned about the lack of evidence of net worth, asked whether he would like "to come back tomorrow" in an effort to obtain Haag's testimony. Kelly declined the offer. These facts, of course, do not merit a retrial.

Kelly cites *Washington v. Farlice, supra*, 1 Cal.App.4th at page 777, in which the Second District Court of Appeal reversed a punitive damages award for insufficient evidence of the defendant's financial condition and remanded the matter for a retrial. The remand, however, was based on *Adams, supra*, 54 Cal.3d 105, which, during the pendency of the appeal announced a new rule that evidence of the defendant's financial condition must be presented at trial to justify an award of punitive damages. Before *Adams*, some courts, including those in the Second Appellate District, did not require that a plaintiff present evidence of a defendant's wealth to support such an award. (*Washington v. Farlice, supra*, at p. 774.) The *Washington v. Farlice* court applied *Adams* retroactively and allowed a retrial so the plaintiff could comply with the new rule. (*Washington v. Farlice*, at p. 777; see also *Douglas, supra*, 1 Cal.App.4th at pp. 745–746.) Here, the law was clear at the time of trial that Kelly had the burden of producing actual evidence of Haag's financial condition.

Kelly also cites *Kenly v. Ukegawa, supra*, 16 Cal.App.4th 49, 56, in which this court held a punitive damages award could not be made "solely on the basis of proof of the profit reaped by a defendant as the result of the fraud." We reversed the award and remanded the matter for a retrial on punitive damages, in line with views we expressed about the importance of evidence of the defendant's net worth. (*Id.* at pp. 58–59.) The opinion includes no discussion as to why we allowed retrial. In *Lara v. Cadag, supra*, 13 Cal.App.4th 1061, the court disapproved a punitive damages award based solely on proof of the defendant's annual income. The court concluded, without any discussion, that "[i]t follows necessarily that the portion of the judgment awarding punitive damages should be reversed and the matter remanded for a new trial on that issue." (*Id.* at p. 1065.) Remand was unnecessary, though, because the case settled. (*Ibid.*) These cases are unavailing, as " '[i]t is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

In *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1154 [82 Cal.Rptr.2d 143], the court reversed a punitive damages award because there was no evidence of the defendant's financial condition, and it did not remand for retrial. That is the proper resolution here as well.

## DISPOSITION

The judgment is reversed insofar as the punitive damages award is concerned. In all other aspects, the judgment is affirmed. Haag is entitled to costs on appeal.

Haller, J., and Aaron, J., concurred.